UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RANDALL J. THOMAS and JAN B. THOMAS, husband and wife,<br><br>      Plaintiffs,<br><br>      v.<br><br>AMER SPORTS COMPANY; AMER SPORTS WINTER & OUTDOOR COMPANY t/a SALOMON SPORTS; SALOMON USA a/k/a SALOMON NORTH AMERICA INC. t/a SALOMON SPORTS; SALOMON S.A.S.; and XYZ BUSINESS ENTITIES 1 THROUGH 10,<br><br>      Defendants, | Case No. 4:20-cv-00565-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Salomon S.A.S.'s ("Salomon") Motion to Dismiss for Lack of Personal Jurisdiction. Dkt. 19. Plaintiffs Randall and Jan Thomas oppose the Motion. Dkt. 20.

The Court held oral argument on February 4, 2022, and took the matter under advisement. Upon review, and for the reasons outlined below, the Court DENIES Salomon's Motion.

## II. BACKGROUND[1]

### A. Factual Background

Plaintiffs Randall and Jan Thomas are citizens of the United States who currently reside in Pocatello, Idaho.

Defendant Salomon is a French corporation with its principal place of business in Annecy, France. Salomon develops, manufactures, distributes, and sells outdoor equipment and is best known for its ski equipment, including, but not limited to, the Salomon XACCESS R60 Energyzer ski boot at issue in this case. Salomon does not manufacture any products in the United States; however, it sells and ships its products to Amer Sports Winter & Outdoor Company ("ASWO") in Ogden, Utah for distribution.

Sometime on or before December 26, 2018, Plaintiff Jan Thomas purchased Salomon XACCESS R60 Energyzer ski boots from Barrie's Ski and Sports in Pocatello, Idaho.

On December 26, 2018, Jan Thomas was skiing at Pomerelle Mountain Resort located in Albion, Idaho when her left Salomon XACCESS R60 Energyzer ski boot failed. This failure resulted in a fall and injury to Jan Thomas's left foot.

The Thomases now bring claims against Salomon and ASWO for negligence in the design, manufacture, and/or distribution of the Salomon brand ski boot, as well as for breach of warranty and strict liability in the design and manufacturing of a defective product. Dkt. 1, at ¶¶ 15–37.

---

[1] The following facts are taken from Plaintiffs' Complaint. Dkt. 1.

### B. Procedural Background

The Thomases filed the instant suit on December 15, 2020. Dkt. 1. Because Salomon is located in France, the parties agreed to stay early case deadlines in order to allow the Thomases adequate time to comply with the Hague Convention and serve Salomon in France. Dkts. 14, 16. After service was complete, Salomon appeared in the case via the instant Motion to Dismiss. Dkt. 19.

In its Motion, Salomon asserts that as a French company—organized under the laws of France and with its principal place of business in France—it does not have the necessary connections with the forum (Idaho) to establish personal jurisdiction.

The Thomases oppose the motion, contesting that while it is true Salomon did not sell or ship the exact ski boot at issue to Jan Thomas directly, it nevertheless has availed itself of jurisdiction in Idaho because it delivered its products into the stream of commerce in Idaho and maintains a website which is accessible in Idaho.

The Court held oral argument on February 4, 2022, and took the matter under advisement.

### III. LEGAL STANDARD

A court cannot adjudicate claims against a defendant over whom it has no jurisdiction. Rule 12(b)(2) of the Federal Rules of Civil Procedure provides for the dismissal of claims where a court lacks personal jurisdiction over a defendant. The plaintiff bears the burden of establishing that the exercise of personal jurisdiction is proper. *See Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004). To establish personal jurisdiction, the plaintiff must show that "the statute of the forum confers personal

jurisdiction over the nonresident defendant" and that the exercise of jurisdiction conforms with the federal constitutional principles of due process. *See Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987).

Where, as here, the motion to dismiss is based on written materials, and where an evidentiary hearing has not been conducted,[2] plaintiffs need to establish only a prima facie showing of jurisdictional facts to withstand the motion. *Wells Cargo, Inc., v. Transport Insurance Company,* 676 F. Supp. 2d 1114, 1118 (D. Idaho 2009) (citing *Ballard v. Savage,* 65 F.3d 1495 (9th Cir. 1995)). The court must take the plaintiff's uncontroverted allegations in their complaint as true and resolve factual disputes in affidavits in the plaintiff's favor. *Id.* (citing *Dole Food Co., Inc., v. Watts,* 303 F.3d 1104, 1108 (9th Cir. 2002)).

Where there is no applicable federal statue governing personal jurisdiction, federal courts apply the law of the state in which the district court sits. *Yahoo! v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1205 (9th Cir.2006) (en banc). "Because Idaho's long-arm statute . . . allows a broader application of personal jurisdiction than the Due Process Clause, the Court need look only to the Due Process Clause to determine personal jurisdiction." *Hill v. Union Pacific Railroad Co*., 362 F. Supp. 3d 890, 895 (D. Idaho 2019) (citing *Wells Cargo,* 676 F. Supp. 2d at 1119 ("[t]hus, under Idaho law, the jurisdictional analysis and federal due process analysis are the same.")).

The Due Process clause of the Fourteenth Amendment requires that a nonresident

---

[2] As noted, the Court held a hearing on Feb 4, 2022. That hearing, however, was not an evidentiary hearing and only included oral argument.

defendant have sufficient "minimum contacts" with the forum state so that notions of "fair play and substantial justice" are not offended. *Hill*, at 895 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Under federal law, personal jurisdiction can be either general or specific. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1776 (2017).

*1. General Jurisdiction*

A court may exercise general jurisdiction only when a defendant is "essentially at home" in the forum state. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1019 (2021) (*citing Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The U.S. Supreme Court has held that alleging general jurisdiction over an out-of-state corporation merely because it is "doing business" in the forum state is "unacceptably grasping." *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014). The Supreme Court held instead that "all-purpose" or "general" personal jurisdiction—the ability to hear claims unrelated to the forum state—is proper only where the corporation is "at home," which is not synonymous with "doing business." *Id*. at 122.

*2. Specific Jurisdiction*

Specific jurisdiction is applicable when a defendant has "certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Yahoo! Inc.*, 433 F.3d at 1205 (cleaned up). The plaintiff's claims "must arise out of or relate to the defendant's contacts" with the forum in order for exercise of specific jurisdiction to be proper. *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1776 (cleaned up). The Due Process clause does not permit jurisdiction to be

based on contacts with the forum state that are random, fortuitous, or attenuated. *Goodyear*, 564 U.S. at 923; *see also Int'l Shoe*, 326 U.S. at 316 (noting due process requires that the defendant have sufficient minimum contacts with the forum such that hauling the defendant into court in the forum "does not offend traditional notions of fair play and substantial justice.").

> The Ninth Circuit analyzes specific jurisdiction by utilizing a three-prong test:
>
> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Yahoo! Inc.*, 433 F.3d at 1205–06 (cleaned up). "Plaintiffs bear the burden of satisfying the first two prongs of the test." *Hill*, 362 F. Supp. 3d at 896 (citing *Menken v. Emm,* 503 F.3d 1050, 1057 (9th Cir. 2007)). If a plaintiff succeeds in satisfying the first two prongs, the burden then shifts to the defendant to "present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (cleaned up).

## IV. ANALYSIS

The Thomases do not challenge Salomon's contention that general jurisdiction does not apply in this case. Accordingly, the sole question for the Court today is whether it has specific jurisdiction over Salomon. To aid in its inquiry, the Court utilizes the Ninth Circuit's test outlined in *Yahoo! Inc*.

### A. Purposeful Availment

Salomon's opening brief on this matter is straightforward and a single paragraph. Dkt. 19, at 7. It argues it has not purposefully availed itself of Idaho and the benefits/protections of its laws because it does not actually conduct any business within the state of Idaho. Salomon claims it does not manufacture, sell, or distribute products in the United States, let alone in Idaho. Furthermore, Salomon avers it does not have an office in Idaho, does not have employees in Idaho, does not own property in Idaho, and has never entered into any contracts to perform services in Idaho. Salomon insists it has never even had an employee or agent visit Idaho. It concludes by reiterating that "Salomon does not conduct any business in the United States, let alone in Idaho. Salomon has no ownership of Salomon-branded products as they enter the United States; instead, ASWO has complete control over the re-sale and distribution of those products." *Id.*

The Court finds some of Salomon's propositions difficult to swallow. For example, Salomon claims it does not "sell or distribute" any products in the United States and yet it has a sole distributor—ASWO—who "sells and distributes" its products in the United States. Presumably Salomon is not giving its products to ASWO for free, thus *it is* selling its products in the United States—if only at a minimum to ASWO. Indeed, only a few sentences after professing it does not "sell [its products] in the United States" or "conduct any business in the United States," Salomon seemingly reverses course and states that it "*sells* its Salomon-branded products to a single purchaser in the United States, ASWO . . . ." Dkt. 19, at 7 (emphasis added). Salomon's legal and IP director, Laurence Grollier, confirmed as much in his declaration. Dkt. 19-2, at ¶ 4. The Court will circle back to this

momentarily, but it is somewhat convoluted to claim your company does not sell products in the United States when, in fact, it does.

The Court also struggles to believe Salomon's argument that ASWO serves as a shield to protect Salomon from liability. Although the precise details of the corporate structure are still unknown, it appears that both ASWO and Salomon fall under the same parent company/s. To what degree Salomon controls ASWO is not clear. However, it is very clear that ASWO and Salomon are *not* disinterested parties engaging in arms-length transactions.

The Thomases make much of the fact that ASWO is located a mere 60 miles from the southern border of Idaho and that this fact should have provided Salomon sufficient notice that its goods would reach consumers in Idaho. The Court does not put as much stock into ASWO's proximity to Idaho as the Thomases; nevertheless, it adds an important element to the argument that Salomon should not be surprised it has been haled into an Idaho court for a product purchased in Idaho. The reason the geographical proximity of ASWO to Idaho is not as important to the Court[3] is because Salomon maintains a website—presumably accessible to people all around the globe—from which it markets and sells its products. This fact is critical to the Court's analysis today.

---

[3] Additionally, were geographical proximity a necessary element, it could limit recovery. For example, under the Court's analysis today, the fact that Salomon maintains a website, from which people in Idaho to Indiana can purchase products, supports a finding of purposeful availment. However, if the Court had a proximity requirement, such might curtail recover in Indiana because it isn't located close to ASWO. Thus, the fact that ASWO is very close to Idaho marginally supports the idea that products might end up in Idaho more than other locations. Nevertheless, as Salomon itself admits, ASWO is its distributor for the whole United States—regardless of where the customer lives.

Salomon has a website—www.salomon.com—written in English, that is accessible to customers in Idaho (and throughout the United States). As detailed in Plaintiffs' Counsel's declaration (Dkt. 20-1),[4] a customer could order a product from Salomon's website—including a ski boot such as the one at issue in this case—and that product would be shipped to the customer's home anywhere in the United States. Salomon's website also allows purchasers to locate a store close to them that sells the specific product they wish to purchase. Salomon's website lists three retailers in Pocatello—including Barrie's Ski and Sports where Jan Thomas purchased the boot in question—and dozens more throughout Idaho. It seems clear, therefore, that Salomon has deliberately placed its products into the stream of commence in Idaho (and the United States as a whole) with the expectation that they will reach Idaho consumers.

Salomon's response to these allegations is confusing at best. Salomon contends that while it is true it maintains a website accessible to people in Idaho, from which a person in Idaho could purchase one of its products (straight from the website or from a physical store in Idaho), all of those activities are coordinated and controlled by ASWO, not Salomon.

Salomon explains that ASWO is the "seller and retailer of all Salomon-branded products . . . even for sales conducted via the website" and all sales from the website are processed by ASWO and shipped from ASWO's location in Utah. Dkt. 21, at 3. Dkt. 21-

---

[4] The Court can take judicial notice of Salomon's website. *Flsmidth Spokane, Inc. v. Emerson*, 2014 WL 2711790, at *4 (D. Idaho June 16, 2014) ("A court may take judicial notice of information announced on a party's website, as long as the website's authenticity is not in dispute and is capable of accurate determination.") (citing *Swisher v. Collins*, 2008 WL 687305, at *23 n. 29 (D. Idaho 2008)). *See also Perkins v. LinkedIn Co.*, 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014) ("Proper subjects of judicial notice when ruling on a motion to dismiss include . . . publicly accessible websites.") (cleaned up).

1. In regard to the local stores, Salomon claims that employees of ASWO update the lists of dealers/retailers on the website. In sum, Salomon contends it has no role in the website whatsoever. Again, the Court struggles to accept this argument.

To begin, there is no way a lay person would know the website was controlled by anyone other than Salomon. The website address is literally "Salomon.com." The website shares details about Salomon—its history in France, its design, its story. And critically, the products listed on the website are *only* Salomon products—no other retailers are featured on the website.[5] Salomon's argument, taken to the extreme, would place liability on a website developer or content manager for "controlling" the website as opposed to the company whose products are actually being sold on that website. This is an untenable position. If Salomon *did not* intend to place its products into the stream of commerce in the United States, it would have simply sold them to ASWO and ASWO would have put the products on *its own website* or sold them via other means without involving Salomon.[6]

Salomon continues to fervently avow that, regardless of the website, because it does not close any sales in Idaho or perform any services in Idaho, it has "not availed itself of any of the privileges and benefits of Idaho law." Dkt. 21, at 4. This misses the mark slightly. The relevant question is to what degree, if any, has Salomon has placed its products into the stream of commerce in Idaho.

---

[5] Said differently, the website is not an outdoor website that lists Salomon's products alongside other outdoor company's products; the sole products on the website are Salomon's products.

[6] Such is not difficult to imagine. Numerous companies claim to be the "sole distributor," the "authorized dealer," or a country's "affiliate" for purposes of marketing, selling, and distributing products made by another company.

MEMORANDUM DECISION AND ORDER - 10

The Thomases point the Court to the case of *Hedrick v. Daiko* in support of their argument that Salomon has placed its products into the stream of commerce in Idaho, even if it did not directly know its products would end up in Idaho. 715 F.2d 1355 (9th Cir. 1983). In that case, Daiko, a manufacturer located in Osaka, Japan manufactured an allegedly defective splice in a wire rope which ended up in Oregon and injured Hedrick. Ultimately, the Ninth Circuit found that "[a] manufacturer or supplier of a defective product who *knew or should have known* that a product would enter the stream of foreign commerce can be subjected, consistently with due process, to a forum state's long-arm jurisdiction and be sued in the forum where the injury occurred." *Id.* at 135 (emphasis added). The Thomases go on to compare the facts in *Hedrick* to the facts in this case and proffer a similar result should follow.

The problem, however, is *Hedrick* has been impliedly (if not explicitly) overruled. As one California Court aptly explained:

> [T]he viewpoint of the court of appeal in *Hedrick* was disapproved by a plurality in *Asahi.* While it is true that the disapproving language in *Asahi* did not represent the opinion of the majority of the justices of the Supreme Court, it is nonetheless significant inasmuch as it casts doubt on the *Hedrick* rationale. For this reason, the continuing vitality of *Hedrick* in the Ninth Circuit was questioned in *Omeluk v. Langsten Slip & Batbyggeri A/S* (9th Cir.1995) 52 F.3d 267, 271. There, the court stated: '*Hedrick* is expressly disapproved in *Asahi* so if that portion of *Asahi* is the law, then *Hedrick* is no longer the law of this circuit.'

*Carretti v. Italpast*, 101 Cal. App. 4th 1236, 1251 (2002). This conundrum is worth fleshing out in order to understand the Court's analysis.

In the aftermath of *World–Wide Volkswagen,* the various federal appellate courts began to differ in their approach to applying the steam of commerce theory. *Compare, e.g., Poyner v. Erma Werke Gmbh,* 618 F.2d 1186, 1190–1191 (6th Cir. 1980) (holding

foreseeability based on stream of commerce was sufficient basis for jurisdiction); *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.,* 647 F.2d 200, 203 (D.C.Cir. 1981) (same); *Bean Dredging Corp. v. Dredge Technology Corp.,* 744 F.2d 1081 (5th Cir. 1984) (same); *Nelson v. Park Industries, Inc.,* 717 F.2d 1120, 1126 (7th Cir. 1983) (same); *Hedrick v. Daiko Shoji Co.,* 715 F.2d 1355 (9th Cir. 1983) (same); *and Fidelity & Casualty Co. of New York v. Philadelphia Resins Corp.,* 766 F.2d 440 (10th Cir. 1985) (endorsing stream of commerce theory but finding it inapplicable in instant case); *with DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280 (3rd Cir. 1981) (holding foreseeability based on stream of commerce alone was insufficient basis for personal jurisdiction); *Humble v. Toyota Motor Co., Ltd.,* 727 F.2d 709 (8th Cir. 1984) (same); *Dalmau Rodriguez v. Hughes Aircraft Co.,* 781 F.2d 9 (1st Cir. 1986) (same); *Chung v. NANA Development Corp.,* 783 F.2d 1124 (4th Cir. 1986) (same); *and Banton Industries, Inc. v. Dimatic Die & Tool Co.,* 801 F.2d 1283 (11th Cir. 1986) (same).

In an effort to provide additional guidance, the United States Supreme Court took up *Asahi Metal Industry Co., Ltd. v. Superior Court of California,* 480 U.S. 102 (1987) ("*Asahi*"). The *Asahi* decision commanded only a plurality of Justices, however, and has itself split the Circuit Courts, with some favoring Justice Brennan's "stream of commerce"[7] approach, others embracing Justice O'Connor's "stream of commerce *plus*"[8] analysis, and

---

[7] The "stream of commerce" approach allows personal jurisdiction to be exercised when a defendant places a product within the stream of commerce with an awareness that the product would be sold in the forum state. *Id.* at 117 (Brennan, J., concurring).

[8] On the other hand, the "stream of commerce plus" approach requires a defendant to purposefully direct actions at the forum state in order to be haled into court there, rather than merely placing a product into the stream of commerce. *Id.* at 112.

still others declining to express a position. *See, e.g., Dehmlow v. Austin Fireworks,* 963 F.2d 941, 947 (7th Cir. 1992) (adopting position consistent with Justice Brennan); *Ruston Gas Turbines, Inc. v. Donaldson Company,* 9 F.3d 415, 420 (5th Cir. 1993) (same); *Barone v. Rich Bros. Interstate Display Fireworks Co.,* 25 F.3d 610, 614–15 (8th Cir. 1994) (same); *Boit v. Gar–Tec Products, Inc.,* 967 F.2d 671, 683 (1st Cir. 1992) (adopting position consistent with Justice O'Connor), *Lesnick v. Hollingsworth & Vose Co.,* 35 F.3d 939, 945–46 (4th Cir. 1994) (same); *Holland Am. Line Inc. v. Wartsila N. Am., Inc.,* 485 F.3d 450, 459 (9th Cir. 2007) (same); *Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1547 (11th Cir. 1993) (declining to adopt either position as controlling); *Kernan v. Kurz– Hastings, Inc.,* 175 F.3d 236, 244 (2d Cir. 1999) (same); and *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.,* 566 F.3d 94, 105 n. 15 (3d Cir. 2009) (same).

For its part—and striving to adhere to the principles outlines in *Asahi*—the Ninth Circuit has opined that "at least a majority and perhaps all the justices agreed in *Asahi* that jurisdiction cannot be founded on the mere presence of a product in the forum, where the product has not been marketed there, and its presence there is not part of the regular and anticipated flow of the of products from the manufacturer." *Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 271 (9th Cir. 1995). *See also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) ("the placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state."). In other words, the Ninth Circuit has essentially adopted the "stream of commerce plus" position.

As for what constitutes "something more," the Ninth Circuit has relied on the Supreme Court's examples in *Asahi* which included "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 861 (9th Cir. 2022) (quoting *Asahi*, 480 U.S. at 112).

Against these storied legal principles, the Court review's Salomon's activities. Here, Salomon did not just passively place its products into the stream of commerce and walk away; it actively advertised those products via its website.

As the Sixth Circuit has observed:

> The operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state if the website is interactive to a degree that reveals specifically intended interaction with residents of the state. In evaluating whether the defendant's contact with the forum state constituted purposeful availment, this and other circuits have used the "*Zippo* sliding scale*" approach, which distinguishes between interactive websites, where the defendant establishes repeated online contacts with residents of the forum state, and websites that are passive, where the defendant merely posts information on the site. Interactive websites can subject the defendant to specific personal jurisdiction, whereas passive websites are less likely to confer such jurisdiction.

*Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 677–78 (6th Cir. 2005) (cleaned up).

Salomon's website is not passive. It is not simply a website talking about Salomon's products or even a website that lists Salomon products for general retail sale with nothing more. Salomon's website is interactive for several reasons.

MEMORANDUM DECISION AND ORDER - 14

First, consumers can purchase products and have them sent anywhere in the United States—including Idaho. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) (finding the company's website was "passive" because it "does not provide any direct means for purchasing parts or requesting services; it simply provides information on the various products . . .."). *Japan Press Serv., Inc. v. Japan Press Serv., Inc.*, 2013 WL 80181, at *13 (E.D.N.Y. Jan. 2, 2013) ("The mere fact that a person can gain information on [a] product by viewing a passive website is not the equivalent of a person advertising, promoting, selling or otherwise making an effort to target its product in [a state]."). *Devon Energy Corp. v. Moreno*, 2022 WL 547641, at *12 (Tex. App. Feb. 24, 2022) (noting that "passive websites, in which the nonresident defendant simply posts information that can be viewed in other jurisdictions and is accessible to anyone in the world connected to the internet, do not constitute purposeful availment of any particular state and thus will not support an exercise of personal jurisdiction." However, if "the website is interactive, allows responses to customer inquiries through the website, or allows customers to enter into contracts" such could support a jurisdictional finding).

Second, Salomon's website lists *locations in Idaho* where a consumer can purchase its products—including the address, hours of operation, and contact information for each store. Dkt. 20-1, at 14, 16. Salomon's actions are more than simply placing a product in the stream of commerce. It actively solicits business from Idaho, sends products to Idaho via its distributor, and alerts customers to where it can purchase its products *in Idaho*. Unlike the party in *Ashai* who "[did] not advertise or otherwise solicit business in [the state] . . . nor did it "create, control, or employ the distribution system that brought its

valves to [the state]" Salomon has advertised its products in Idaho and has a corporate relationship with the distribution system that brought the products to Idaho. 480 U.S. at 112.

Finally, as will be discussed in greater detail below, it would also be inequitable to exclude Salomon from this case especially in light of the claims at issue. Jan Thomas is suing Salomon for, among other things, defective design. Salomon never claims that it did not design the boot in question, nor has it tried to pawn off responsibility to ASWO—like it has with the actual sales and website activity. And presumably it cannot. ASWO does not appear to be a co-manufacturer of Salomon's products. Allowing Salomon to dodge responsibility would stymie manufacturing defect cases, particularly in today's globalized economy where many products are manufactured overseas. Allowing a distributor to serve as a liability shield would create an obvious loophole that would be easy for corporations to exploit and leave the American people powerless against dangerous products.

Thus, were the Court to find it did not have jurisdiction over Salomon, Jan Thomas would have no reasonable recourse for any of her product-based claims. Such an outcome does not make sense based upon Salomon's active marketing in this forum. Furthermore, ASWO's involvement as a distributor does not save Salomon.[9] Salomon's products are marketed to Idaho customers and purchased by Idaho customers. Idaho customers must have recourse should the products fail. As will be fleshed out below, that recourse *could*

---

[9] The court has previously found that it did not have jurisdiction over a distributor and that claims against the manufacturer were more relevant when determining venue and jurisdiction. *See CAO Lighting, Inc. v. Light Efficient Design*, No. 4:16-CV-00482-DCN, 2017 WL 4556717, at *5 (D. Idaho Oct. 11, 2017) (finding the "claims against [the] distributor, are peripheral to the claims against [] the manufacturer of the allegedly infringing goods").

occur in France. But the balance of factors weighs in favor of allowing legal recourse in the United States—particularly in Idaho where the events all took place.

In short, the Court finds that Salomon has purposefully availed itself of conducting business in Idaho and must be subject to the benefits and protections of this forum's laws.

## B.  Forum-related Activities

To begin, the Court reiterates that Salomon's arguments here rest on the premise that it did not, does not, and will not ever have any connections with Idaho because it does not sell, market, or distribute any products in the United States. As alluded to above, this argument is not only incorrect (it does sell to U.S.-based ASWO), but is based upon the rather tricky corporate structure that encompasses Salomon.

Upon questioning by the Court during oral argument, Salomon's counsel had a difficult time explaining how Salomon, ASWO, and its various affiliates, parent companies, and conglomerates all fit together. The corporate structure is, frankly, very confusing. The Court is not implying anything nefarious—large companies (especially multi-national corporations) often have complicated structures. However, the fact that Salomon cannot explain those connections has an air of the proverbial "shell-game" in which the party who is in control and/or liable is always shifting or unknown. Against the confusing backdrop of how Salomon and/or ASWO are organized, the Court is much more inclined to examine the practical effects of Salomon's website, sales, and customer service

MEMORANDUM DECISION AND ORDER - 17

than to allow Salomon to hide behind the technicalities of its sales to ASWO.[10] The Court returns to the parties' specific arguments regarding forum activities.

Both parties' arguments on this topic are relegated to a single paragraph. *See* Dkts. 20, at 13; 21, at 5. In sum, both sides claim this second factor naturally follows from its conclusion of the first fact: plaintiffs in favor, defendants against.

Salomon continues to assert that "Plaintiffs' alleged injuries do not arise out of Salomon's interactions with Idaho; they arise from ASWO's interactions with Idaho." Dkt. 21, at 5.

As with its argument above, Salomon muddies the waters here. Glaringly absent from its above pronouncement is any agreement that ASWO will accept responsibility for Salomon's products. And why would it? It is a distributor, not a manufacturer. Salomon continually throws ASWO under the bus, but such is improper. This is a product liability suit. Salomon, not ASWO, made the product at issue.

Jan Thomas bought the product in Idaho from a physical location in Idaho. Even if she had purchased the boot online, there can be no doubt that Salomon was aware its products were being purchased in Idaho. It is those activities within Idaho—marketing products via a website accessible in Idaho, having inventory in Idaho retail stores, and selling products to customers in Idaho—that constitute Salomon's forum-related activities.

---

[10] As this is fleshed out in discovery, the Court *may* revisit the matter. *See Holland Am.*, 485 F.3d at 459 ("It is well established that, as a general rule, where a parent and a subsidiary are separate and distinct corporate entities, the presence of one . . . in a forum state may not be attributed to the other.").

And again, absent Salomon's participation in this case, Plaintiffs' product defect claims would fall flat.[11]

## C.  Fair Play and Substantial Justice

Salomon begins by arguing that Plaintiffs are being unfair because they can bring their claims against ASWO—the entity that imported, sold, and distributed the product at issue—even if it is dismissed as a Defendant. Not so. Unless ASWO (or Salomon) is willing to concede that ASWO is liable for Salomon's manufacturing decisions, some of Plaintiffs' claims can *only* be brought against Salomon.

In determining the reasonableness of exercising jurisdiction over a defendant, courts consider the following:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Wells Cargo, Inc.*, 676 F. Supp. 2d at 1122 (quoting *Menke,* 503 F.3d at 1057.)

"As to the first factor, some cases in the Ninth Circuit have suggested that once the minimum contacts threshold is met the degree of intrusion into the forum becomes irrelevant." *Id.* This aside, Salomon states that it sells and delivers *all* of its Salomon-branded products to ASWO and thus does not inject itself or intrude in Idaho in any fashion.

---

[11] This would be the end of the case because, presumably, ASWO's first argument in opposition to any strict liability claims will be that it didn't manufacture the product; Salomon did. Such an outcome would be manifestly unjust.

As explained in detail above, however, this is not accurate. Salomon actively advertises in Idaho, and it strains reason to think Salomon would not expect its products to be distributed in Idaho—not only because of Idaho's close proximity to Ogden, Utah but, more importantly, because of Salomon's website activities.

Second, the burden on Salomon to defend itself in this action is slight. While located in France, Salomon is a sophisticated international corporation that can hire counsel in Idaho. Additionally, Salomon already conducts business in this part of the United States (via ASWO). Finally, "modern transportation and communications have made it much less burdensome for a party sued to defend [itself] in a State where [it] engages in economic activity," and it "usually *will not* be unfair to subject [it] to the burdens of litigating in another forum for disputes relating to such activity." *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473–76 (1985) (emphasis added).

Third, Salomon has not set forth any facts or arguments showing any sovereign conflicts between France and Idaho in litigating this case.

Fourth, Idaho has a manifest interest in adjudicating the instant dispute. *See Griffin v. Ste. Michelle Wine Ests. LTD*., 491 P.3d 619, 638 (2021) ("Idaho has a clear and strong interest in providing its residents with a forum to adjudicate product liability claims."). This case involves injured Idahoans, who purchased a foreign product in an Idaho retail store. As such, Idaho has an interest in providing Plaintiffs with a forum for redressing those injuries.

Fifth, the most efficient judicial resolution of this controversy will happen in Idaho. The Thomases purchased the allegedly defective boot in Idaho and it is currently located

in Idaho. The injury took place in Idaho. Plaintiffs' medical providers are located in Idaho. Idaho clearly is the most convenient place for an efficient judicial resolution of this matter.

Sixth, based on the foregoing, Idaho is understandably quite important to Plaintiffs' interests in convenient and effective relief.

Lastly, Salomon has not suggested any alternative forum and the Court is unaware of any that would be more convenient than Idaho. Litigating this case in France might be convenient for Salomon, but it would be an enormous burden on Plaintiffs, their witnesses and treatment providers, and their physical evidence.

Thus, all relevant factors weigh in favor of an Idaho court exercising jurisdiction over Salomon.

And as the Court has already alluded to under both prior prongs, it would be inequitable *to Plaintiffs* were the Court to excuse Salomon from this case based on jurisdiction. Some of the claims at issue are product liability claims. Those can only brought against the designer and manufacture of the product itself—Salomon.

## V. CONCLUSION

This case presents an interesting legal question. Salomon's contacts with Idaho are different than the types of contacts the Court typically encounters that make such a determination for jurisdictional purposes relatively simply. Under *Asahi* and its Ninth Circuit progeny, this is a close call. Nevertheless, Salomon has availed itself of Idaho. It seems to have, almost strategically, interjected itself just enough to reap the benefits of Idaho's business, while simultaneously hoping those actions were not enough to be haled into Court. Salomon is incorrect.

MEMORANDUM DECISION AND ORDER - 21

This is not a situation where Salomon has simply placed its products in the stream of commerce and done nothing more. Instead—even assuming Salomon's arguments about ASWO's involvement in the website—Salomon is marketing and selling Salomon-branded products on a globally-focused website under Salomon's name. Salomon cannot reasonably claim surprise that its products ended up in Idaho when it markets its products in Idaho, ships its products to Idaho, and alerts customers to locations in Idaho where its products can be purchased.

And as noted, Salomon is the designer and manufacturer of the product that allegedly failed. It cannot hide behind a distributor to dodge potential liability. Construing, as it must, all factual discrepancies in the Thomases favor, the Court finds they have met their burden in establishing "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ballard*, 65 F.3d at 1498. The Court finds it has personal jurisdiction over Salomon.

## VI. ORDER

1. Salomon's Motion to Dismiss (Dkt. 19) is DENIED.

DATED: April 8, 2022

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 22